In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1937

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff-Appellee,

v.

UNITED AIR LINES, INCORPORATED,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 0242--George W. Lindberg, Judge.

ARGUED NOVEMBER 29, 2001--DECIDED April 25, 2002


   Before COFFEY, EASTERBROOK and RIPPLE,
Circuit Judges.

   RIPPLE, Circuit Judge.  The Equal
Employment Opportunity Commission
("EEOC") brought this action to enforce
an administrative subpoena against United
Air Lines, Inc. ("UAL") in the course of
its investigation into charges of
national origin and sex discrimination
filed by a UAL flight attendant, Maureen
Droge. The district court enforced the
subpoena in its entirety. UAL appealed,
and we now affirm in part and reverse and
remand in part.

I

BACKGROUND

A.  Facts

   Ms. Droge began working for UAL as a
flight attendant in 1990. In 1995, she
requested, and was granted, a temporary
assignment in Paris, France. While
assigned in Paris, Ms. Droge became
pregnant. Because UAL does not allow its
flight attendants to fly during their
third trimester of pregnancy, Ms. Droge
was placed on involuntary leave. At some
point, Ms. Droge apparently applied for
temporary disability benefits through the
French social security system. She was
denied benefits, however, because UAL did

not make contributions to the French system on behalf of its American flight attendants.

On February 8, 1999, Ms. Droge filed a charge of discrimination, alleging that UAL had violated Title VII by discriminating against her and other Americans on the basis of their national origin. Specifically, Ms. Droge alleged:

I.  I am employed by Respondent in Paris, France. Respondent does not pay into the French Social Security system for me and other Americans employed or domiciled in France. As a result, Americans are not compensated for absences from work due to illness or temporary disability whereas French employees are.

II.  I believe that I and other Americans have been discriminated against because of our national origin in violation of Title VII of the Civil Rights Act of 1964, as amended, in that Respondent does not contribute to the French Social [security system], but is permitted to do so under French law, for Americans employed or domiciled in France.

R.9, Tab 9, Ex.B.

In its response to the charge, UAL explained that Ms. Droge's benefits are governed by a collective bargaining agreement and that her eligibility for French social security benefits is dictated by international treaty. Specifically, UAL stated that a treaty between the United States and France, Agreement on Social Security Between the United States and the French Republic ("treaty"), prevented it from contributing to the French social security system on behalf of American citizens. The EEOC, however, determined that it needed additional information in order to assess the merits of the charge. Consequently, it requested that UAL provide the following:

1. Identify each and every benefit received by employees of United Airlines who are French citizens resident in France including, but not limited to, health insurance, unemployment insurance--or its equivalent, pension or social security benefits--or their equivalents, disability benefits, medical or family leave benefits--or their equivalents.

2. For each benefit identified pursuant to paragraph 1 above, state whether the benefit is provided through a French governmental entity, through a private contractor, or directly by United Airlines or its subsidiaries.

3. For each benefit identified pursuant to paragraph 1 above, state whether United Airlines or any of its subsidiaries makes any financial contribution toward the benefit.

4. For each benefit identified pursuant to paragraph 1 above, state whether that benefit is provided pursuant to law or voluntarily. If it is providedpursuant to law, identify the law which mandates the benefit.

5. For each benefit identified pursuant to paragraph 1 above, state whether the benefit may be provided to United employees residing in France who are not French citizens. For any benefit which United asserts may not be provided to non-French citizens, state the basis of that assertion.

6. For each benefit identified pursuant to paragraph 1 above, state whether the benefit is provided to United employees residing in France who are not French citizens.

7. For each benefit which may be provided to United employees who reside in France but are not French citizens state the following:

a. Why is the benefit not provided to those employees;

b. What benefit, if any, is provided to those employees in lieu of the benefit not provided.

8. For each benefit identified pursuant to paragraph 7.b. above, state the cost to United Airlines--in current U.S. dollars--of the benefit provided to employees who are French citizens and the cost of the benefit provided to employees who are not French citizens.

9. For each benefit identified pursuant to paragraph 7.b. above, state the value of each benefit provided to employees who are French citizens--in current U.S.

dollars--and state the value of each benefit provided to employees who are not French citizens.

10. Identify each United Airlines employee residing abroad who has taken or been placed on a medical leave of absence, disability leave, or who has been otherwise laid off. For each such employee, state the basis for the leave or layoff, the sex of the employee, the citizenship of the employee and the nationality of the employee. Specifically identify any employee who has taken or been placed on leave or layoff due to pregnancy.

11. Identify each United Airlines employee residing abroad who has applied for unemployment compensation with the United States Government or foreign governmental entities due to medical related reasons including but not limited to pregnancy.

12. For each employee identified pursuant to paragraph 10 above, state any benefits received by the employee as a result of going on or being placed on leave or being laid off, and the source of the benefits.

R.2, Att. 3 (emphasis in original)./1

   UAL objected to the request on several grounds. Primarily, it maintained that the collective bargaining agreement, in conjunction with the treaty, deprived the EEOC of jurisdiction to investigate Ms. Droge's claims. UAL also maintained that complying with the request would be unduly burdensome. The EEOC found these arguments unpersuasive and issued a subpoena for the information requested.

   UAL challenged the subpoena through administrative channels. In its petition to revoke the subpoena, UAL reiterated its belief that the collective bargaining agreement and the treaty should end the EEOC's investigation. UAL also argued that the subpoena was overly broad, unduly burdensome and that it sought irrelevant information. UAL was unsuccessful in persuading the EEOC to revoke the subpoena. However, the EEOC did "limit the scope of the information to be produced to the time frame" from January 1, 1997 forward. R.9, Ex.3 at 8.

B.  District Court Proceedings

After rejecting UAL's arguments to revoke the subpoena, the EEOC brought this enforcement action in the district court. In its moving papers, the EEOC stated that it had jurisdiction to investigate Ms. Droge's charges of national origin and sex discrimination and that the inquiries were directed at the charges. Therefore, it asserted, given the narrow scope of subpoena enforcement proceedings, the district court ought to enforce the subpoena. The district court issued an order to show cause why the enforcement application should not be granted.

In response, UAL moved for summary judgment or, in the alternative, submitted an opposition to the enforcement action. UAL argued that the subpoena should not be enforced for several reasons. It first claimed that the investigation fell outside the EEOC's statutory authority. UAL also believed that the subpoena sought information unrelated to Ms. Droge's underlying charge. Finally, UAL maintained that the subpoena was excessively burdensome. In support of this argument, UAL presented affidavits from its senior counsel and its human resources manager responsible for technical support. These individuals attested that, given the number of UAL employees, the number of countries in which UAL has operations and the limitations of UAL's human resources software, it would take approximately "5.5 employees working 2000 hours apiece for an entire year" to comply with the subpoena as written. Declaration of Jennifer Ansbro Hale, R.9, Ex.7 at para. 13; see also Declaration of Mitsuo Ogata, R.9, Ex.8. The district court rejected UAL's motion for summary judgment, but stated that it would consider UAL's submissions as an opposition to the EEOC's enforcement application.

After a hearing, the district court stated that it would "make this very short." R.16 at 36. It then determined that "[b]ased on the submissions of the parties and the argument, the Court finds that the EEOC does in fact have jurisdiction to proceed on this matter. And as I've pretty well articulated to you previously, I'm not persuaded that the subpoena is overburdensome." Id. The court then asked the attorney for the

EEOC to draft an order reflecting the decision. The order issued the following day and stated:

THE COURT FINDS AS FOLLOWS:

1) The Equal Employment Opportunity Commission ("EEOC") has jurisdiction to investigate the underlying Charges in this case as they allege national origin and sex discrimination and therefore fall within the scope of Title VII;

2) The information sought by the EEOC subpoena is not unduly burdensome.

IT IS THEREBY ORDERED:

1) Respondent, United Air Lines, shall fully comply with the Equal Employment Opportunity Commission's subpoena, Subpoena No. CH-00-179;

2) Enforcement of this Order is stayed pending Respondent's appeal to and ruling by the Seventh Circuit Court of Appeals.

R.12. UAL timely appealed.

II

DISCUSSION

A.  Standard of Review

   Subpoena enforcement proceedings "are designed to be summary in nature." EEOC v. Tempel Steel Co., 814 F.2d 482, 485 (7th Cir. 1987). The court has an oversight role, but it is limited: "As long as the investigation is within the agency's authority, the subpoena is not too indefinite, and the information sought is reasonably relevant, the district court must enforce an administrative subpoena." Id.

   We review many aspects of a district court's enforcement decision deferentially.

A finding by the district court that documents are reasonably relevant to a legitimate agency purpose cannot be overturned absent a showing that the factual determinations on which it is based are clearly erroneous or that the ruling itself constitutes an abuse of discretion. Similarly court assessments of whether disclosure would be burdensome

. . . should only be reversed for abuse of discretion . . . .

Dow Chem. Co. v. Allen, 672 F.2d 1262, 1267 (7th Cir. 1982) (citations omitted); see also EEOC v. Quad/Graphics, Inc., 63 F.3d 642, 645 (7th Cir. 1995) (quoting same). Questions of law that do not depend on the district court's factual findings, however, are reviewed de novo. See Dow Chem., 672 F.2d at 1267.

B.  Jurisdiction

UAL first maintains that the district court should have refused to enforce the EEOC's subpoena because the agency lacks jurisdiction to investigate the underlying charge. UAL primarily argues that the charge should be construed as a charge of citizenship discrimination, as opposed to national origin discrimination. Because citizenship discrimination is not prohibited by Title VII, UAL continues, the EEOC is not authorized to investigate the claim. As a corollary, UAL contends that the actions identified in Ms. Droge's charge are sanctioned by international treaty. Consequently, the treaty operates to deprive the EEOC of investigative authority concerning these actions.

With respect to its first argument, UAL focuses on the language used by the EEOC in its subpoena which speaks in terms of citizenship as opposed to country of origin. See R.9, Ex.1 para.para. 1, 5, 7 & 8-10 ("1. Identify each and every benefit received by employees of United Airlines who are French citizens . . . .") (emphasis added). UAL also points to the EEOC's determination letter-- declining to revoke the administrative subpoena--which refers to Ms. Droge's national origin as "United States." R.9, Ex.3 at 2.

We begin our analysis with 42 U.S.C. sec. 2000e-8(a), which provides the statutory authority for EEOC investigations. The section provides:

In connection with any investigation of a charge filed under section 2000e-5 of this title, the Commission or its designated representative shall at all reasonable times have access to, for the purposes of examination, and the right to copy any evidence of any person being

investigated or proceeded against that relates to unlawful employment practices covered by this subchapter and is relevant to the charge under investigation.

Id. (emphasis added). The Supreme Court has explained that the authority of the EEOC to investigate is grounded in the charge of discrimination:

[T]he EEOC's investigative authority is tied to charges filed with the Commission; unlike other federal agencies that possess plenary authority to demand to see records relevant to matters within their jurisdiction, the EEOC is entitled to access only to evidence "relevant to the charge under investigation."

EEOC v. Shell Oil Co., 466 U.S. 54, 64 (1984) (quoting 42 U.S.C. sec. 2000e-8(a); footnotes omitted). Consequently, the Court has concluded, a valid charge of discrimination "is a jurisdictional prerequisite to judicial enforcement of a subpoena issued by the EEOC." Id. at 65. Whether a specific charge is valid/2 is determined from the face of the charge, not from extrinsic evidence. See EEOC v. K-Mart Corp., 694 F.2d 1055, 1065 (6th Cir. 1982).

Turning to the charge at issue, we do not believe that the charge fails to allege an injury that, on its face, is covered by Title VII. It states:

I. I am employed by Respondent in Paris, France. Respondent does not pay into the French Social Security system for me and other Americans employed or domiciled in France. As a result, Americans are not compensated for absences from work due to illness or temporary disability whereas French employees are.

II. I believe that I and other Americans have been discriminated against because of our national origin in violation of Title VII of the Civil Rights Act of 1964, as amended, in that Respondent does not contribute to the French Social [security system], but is permitted to do so under French law, for Americans employed or domiciled in France.

R.9, Tab 9, Ex.B. The charge, therefore, identifies the allegedly discriminatory act and alleges a basis for the

discrimination--national origin--that is covered by Title VII./3

   UAL does not point to any infirmities in the charge. Instead, it relies solely on language chosen by the EEOC in its subpoena and determination letter. Although the EEOC's use of the terms "citizen" and "United States" may suggest that the EEOC's attention is focused upon citizenship as opposed to national origin, and, as a result, may strengthen UAL's argument that the EEOC's inquiries are not directed at investigating the underlying charge of national origin discrimination, this language does not affect the validity of the underlying charge or the EEOC's authority to investigate it./4

   UAL argues alternatively that the treaty operates to divest the EEOC of authority to investigate Ms. Droge's charge. Specifically, UAL points to this court's decisions in Fortino v. Quasar Co., 950 F.2d 389 (7th Cir. 1991), and Weeks v. Samsung Heavy Industries Co., 126 F.3d 926 (7th Cir. 1997), for the proposition that the treaty deprives the EEOC of jurisdiction in this matter. We believe UAL reads these cases too broadly. Neither of these cases addresses the authority of the EEOC to investigate a charge of discrimination. The claims at issue in Fortino and Weeks already had proceeded through the EEOC, and were before this court on an appeal from a judge and jury verdict and on an appeal from summary judgment, respectively. In both cases, we determined that the exercise of treaty rights--in those cases the right of a foreign sovereign to employ their own citizens--"may not be made the basis for inferring a violation of Title VII." Fortino, 950 F.2d at 393; Weeks, 126 F.3d at 935 (quoting same). Consequently, we dismissed the national origin claim in Fortino and affirmed the grant of summary judgment in Weeks.

   "However, the EEOC's authority to investigate is not negated simply because the party under investigation may have a valid defense to a later suit." EEOC v. Tempel Steel Co., 814 F.2d 482, 486 (7th Cir. 1989). Even if an employer offers a valid defense in response to the charge, or presents facts that undermine the EEOC's jurisdiction, the EEOC does not have to take an employer at its word, but

may investigate the underlying charge to determine the validity of the defenses raised. See Commodity Trend Serv., Inc. v. CFTC, 233 F.3d 981, 986 (7th Cir. 2000) ("An agency may investigate to determine whether it has jurisdiction over a party as long as the party's conduct superficially appears to bring it within the jurisdiction of the agency . . . ."); EEOC v. A.E. Staley Mfg. Co., 711 F.2d 780, 787 (7th Cir. 1983) ("We note initially that the mere assertion by an employer that his employment practices are lawful does not deprive the EEOC of jurisdiction. No action would ever be brought against an employer if the jurisdiction of the EEOC depended upon the assertions of employers as to whether their own employment practices were lawful."). Consequently, even when an employer asserts that its actions are protected or excused by international treaty, there is a legitimate role for the EEOC.

## C. Relevance and Burdensomeness

UAL next argues that the subpoena as written requests information that is not relevant to determining whether UAL could have contributed to the French social security system on behalf of Ms. Droge. Alternatively, even if the information were relevant, UAL submits that complying with the subpoena would place an undue burden on UAL. The EEOC, on the other hand, believes that it only has to establish that the information requested is minimally relevant. It further claims that, because the information sought meets this requirement, it is entitled to have the subpoena enforced absent evidence that compliance would disrupt UAL's normal business operations. We do not believe that either of these views accurately reflects the relationship between relevance and burdensomeness in the context of agency subpoenas.

### 1. Relevance

The EEOC's investigative authority is not plenary; the EEOC "is entitled to access only to evidence relevant to the charge under investigation." Shell Oil, 466 U.S. at 64 (internal quotation marks and citations omitted). As discussed previously, see supra page 10, one aspect of this statutory requirement is a valid

charge to form the basis of the EEOC's investigation. The charge requirement evidences "Congress' desire to prevent the Commission from exercising unconstrained investigative authority." Shell Oil, 466 U.S. at 65.

Furthermore, "the Commission is entitled to access only to evidence 'relevant' to the charge under investigation." Id. at 68 (quoting 42 U.S.C. sec. 2000e-8) (emphasis added). The EEOC's burden is not particularly onerous. See id. at 68; see also EEOC v. S. Farm Bureau Cas. Ins. Co., 271 F.3d 209, 211 (5th Cir. 2001) (stating that the district court will enforce a subpoena "when the EEOC carries its burden of demonstrating that the information requested is relevant to the charge filed against the employer"). Courts traditionally have allowed the EEOC access to information "that might cast light on the allegations against the employer." Shell Oil, 466 U.S. at 68-69./5

A closer look at some of the cases supporting the Court's rationale in Shell Oil sheds significant light on the meaning of "relevance" in the subpoena context. For example, in Shell Oil the Court referenced its decision in United States v. Arthur Young & Co., 465 U.S. 805 (1984), in which it had adopted an "expansive definition of 'relevance'" in the "analogous context of an IRS subpoena, pursuant to 26 U.S.C. sec. 7602, of workpapers pertaining to an investigation of the correctness of a tax return." Shell Oil, 466 U.S. at 69 n.20. In Arthur Young, the Supreme Court distinguished the relevance standard employed in the subpoena context from the relevance standard employed "in deciding whether to admit evidence in federal court." Arthur Young, 465 U.S. at 814. The Court remarked that the courts of appeals had accepted widely the broader concept of "relevance" in the formulation that subpoenaed documents "might throw light upon the correctness of the return." Id. n.11 (internal quotation marks omitted). It further noted that the Second Circuit, in elaborating upon this standard, had required that the "might" in the articulated standard be indicative of "'a realistic expectation rather than an idle hope that something may be discovered.'" Id. (quoting United States v. Harrington, 388 F.2d 520, 524 (1968)).

In further refining the concept of relevance in Shell Oil, the Supreme Court also approved the decision of the Sixth Circuit in Blue Bell Boots, Inc. v. EEOC, 418 F.2d 355 (6th Cir. 1969). In that case, the Sixth Circuit stated that racial discrimination is "by definition class discrimination" and held that, in determining whether an employer practiced racial discrimination, the existence of discrimination in job classifications or hiring situations other than those of the complainants "may well justify an inference that the practices complained of here were motivated by racial factors." Blue Bell Boots, 418 F.2d at 358; see also EEOC v. Roadway Express, Inc., 750 F.2d 40, 43 (6th Cir. 1984) (citing Blue Bell Boots for the proposition that "evidence concerning employment practices other than those specifically charged by complainants may be sought by an EEOC administrative subpoena"). As another example of the permissible scope of a subpoena, the Court in Shell Oil cited Local No. 104, Sheet Metal Workers v. EEOC, 439 F.2d 237, 243 (9th Cir. 1971), for the proposition that information from conduct prior to the effective date of the legislation can also be relevant to establish the purpose and effect of current policies. See Shell Oil, 466 U.S. at 69 n.20.

However, the Supreme Court also has cautioned that the charge and relevance requirements should not be interpreted so broadly as to render the statutory language a "nullity." Id. at 69. The requirement of relevance, like the charge requirement itself, is designed to cabin the EEOC's authority and prevent "fishing expedition[s]." K-Mart Corp., 694 F.2d at 1066. Indeed, as we have noted previously, although the legitimate scope of the subpoena power includes information that "might throw light upon" the inquiry raised by the complaint, "the might" is "an indication of a realistic expectation rather than an idle hope that something may be discovered." Harrington, 388 F.2d at 524. Absent a finding that the material sought is relevant, a court may not enforce an EEOC subpoena. See S. Farm Bureau Ins., 271 F.3d at 211; EEOC v. Ford Motor Credit Co., 26 F.3d 44, 47 (6th Cir. 1994).

## 2. Burdensomeness

In determining whether a subpoena ought to be enforced, modified or quashed, the district court also must consider the burdensomeness of compliance. "[T]he presumption is that compliance should be enforced to further the agency's legitimate inquiry into matters of public interest." FTC v. Shaffner, 626 F.2d 32, 38 (7th Cir. 1980). Consequently, a court may modify or exclude portions of a subpoena only if the employer "carries the difficult burden of showing that the demands are unduly burdensome or unreasonably broad." Id. Often we have phrased this "difficult burden" as requiring a showing that "compliance would threaten the normal operation of a respondent's business." EEOC v. Bay Shipbuilding Corp., 668 F.2d 304, 313 (7th Cir. 1981). However, as Shaffner emphasizes, that scenario is more illustrative than categorical. "What is unduly burdensome depends on the particular facts of each case and no hard and fast rule can be applied to resolve the question." Shaffner, 626 F.2d at 38. Conclusory allegations of burdensomeness are insufficient. Id.

We often have considered the cost of compliance when evaluating burdensomeness. If the personnel or financial burden on the employer is great compared to the resources the employer has at its disposal, the district court should attempt to alleviate this burden. See, e.g., Quad/Graphics, 63 F.3d at 649 (rejecting burdensomeness argument in part because EEOC's offer of random sampling would reduce by ninety percent the time involved in complying with the subpoena). Essentially, it is the "court's task . . . to weigh the likely relevance of the requested material to the investigation against the burden to [the respondent] of producing the material." Ford Motor Credit, 26 F.3d at 47.

## 3. Application

When considerations of relevance and undue burden are applied to the present case, we do not believe that the subpoena, as issued, can be enforced./6 In assessing the relevance of the

information requested by the subpoena, we examine first the nature of the charge. In her charge of discrimination, Ms. Droge alleges that she has suffered discrimination on the basis of her national origin and sex because of UAL's failure to make contributions to the French social security system on her behalf. The information sought, however, goes far beyond an inquiry into whether and for whom UAL makes French social security payments. It is not limited to individuals who may be considered similarly situated to Ms. Droge either by position (flight attendant) or by location (France); the subpoena requires extensive information with respect to all United employees residing abroad. As the Fifth Circuit wrote in EEOC v. Packard Electric Division, General Motors Corporation, 569 F.2d 315, 318 (5th Cir. 1978), "[i]n the context of an investigation of an individual complaint, it might well be most natural to focus on that employing unit or work unit from which came the decision of which the individual complainant complains; within such a unit the EEOC might well need a wide spectrum of statistical data in order to illuminate the general policies bearing on the complainant's situation."

In spite of this caution, the EEOC maintains that all the requested information will tend to "cast light" on Ms. Droge's allegations. See Appellee's Br. at 24. Although the relevance requirement is not onerous, we believe that accepting the EEOC's interpretation of relevance in this case would render that requirement a "nullity." In the face of UAL's demonstration of the breadth of the subpoena in relation to the charge, the EEOC has made a feeble, and unconvincing, effort to explain how a wholesale review of "each and every benefit" provided to all UAL's French employees will shed light on the propriety of UAL's failure to pay into the French social security system. See R.2, Att. 2 para. 1. The district court and this court are left without any realistic explanation of the possible relevance of how providing the EEOC with information on "each United Airlines employee residing abroad who has taken . . . a medical leave of absence," id. para. 10, might assist it in resolving Ms. Droge's charge. Cf. Packard Elec., 569 F.2d at 318 (acknowledging that "statistical

information may be used to establish that the treatment of a particular employee follows a general pattern of employer discrimination," but stating that "it does not help us in determining precisely what statistical and comparative data are to be deemed 'relevant'"; the court "must look to the particular purpose of the investigation in question").

The EEOC argues alternatively that it "must have access to employment information concerning a broad range of employees to be able to determine whether United's policies have a disparate impact on men and women and whether United's policies discriminate based on national origin." Appellee's Br. at 26. However, the "policy" at issue in the charge is UAL's failure to pay into the French social security system. Nothing in the charge suggests systemic discrimination on the basis of national origin or sex with respect to life, health, disability and leave benefits./7 Allowing the EEOC to conduct such a broad investigation would require us to disregard the Congressional requirement that the investigation be based on the charge.

Even if we were to find that all the information required by the subpoena was relevant to the charge in some tangential way, we would have to conclude that the voluminous request of the EEOC is overly burdensome. The financial and administrative demand placed on UAL is significant and, in light of the tangential need for the information, an undue burden on UAL.

The EEOC has the right, of course, to investigate the charge now before it. On remand, the district court must undertake, consistent with our opinion today, the fact-bound inquiries necessary to determine the relevance of each of the requests that pertains to the charge currently before the EEOC. However, before undertaking this task, we believe it is incumbent on the district court first to resolve whether there is any possibility that Ms. Droge might prevail on her complaint. We note that counsel for the EEOC conceded at oral argument that UAL is correct in its submission that a treaty between the United States and France precludes UAL's making the contributions to the French social security system that Ms. Droge claims

have been denied her. If the existence of that treaty obligation resolves the matter, we see no reason for the district court to undertake any additional scrutiny of the subpoena because the EEOC would have no ground upon which to justify its issuance. The EEOC cannot justify further investigating a charge for which it has conceded there is a valid affirmative defense.

Conclusion

   For the foregoing reasons, we affirm the judgment of the district court on the jurisdictional issue. In all other respects, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion. UAL may recover its costs in this court.

AFFIRMED in part;
REVERSED and REMANDED in part

FOOTNOTES

/1 On February 6, 2000, two days after the EEOC sent its request for information to UAL, Ms. Droge filed a second charge of discrimination. See R.9, Ex.9, Att. E. In that charge, Ms. Droge alleged that UAL had frustrated her efforts to obtain benefits from the "Caisse d' Allocations Familiales" and that it otherwise had retaliated against her for filing her original charge. Id. Still later, in June 2000, Ms. Droge amended her original charge. See R.9, Ex.9, Att. B. Her amendment did not alter the substantive allegations of the charge; however, she checked the box on the form to indicate that she had suffered discrimination on the basis of her sex and stated: "I believe that I and other females have been discriminated against in violation of Title VII." Id. In its brief, the EEOC relies on the amended charge--specifically the fact that it includes allegations of sex discrimination--to justify the breadth of the information requested. However, the EEOC does not mention the February 6, 2000 retaliation charge, nor does the EEOC rely upon that charge as a basis for its information request.

/2 The statutory requirements for a charge of discrimination are set forth at 42 U.S.C. sec. 2000e-5(b).

/3 There is no question that, if the charge alleged only citizenship discrimination, it would be outside the scope of Title VII. See Espinoza v. Farah Mfg. Co., Inc., 414 U.S. 86, 95 (1973) ("[N]othing in the Act makes it illegal to dis-

criminate on the basis of citizenship or alien-age."); Fortino v. Quasar Co., 950 F.2d 389, 391-92 (7th Cir. 1991) ("Title VII forbids discrimination on the basis of national origin, not of citizenship.").

/4 The charge was amended subsequently to include sex discrimination. Because we resolve the jurisdictional issue on the basis of the original charge, we have no occasion to consider UAL's claim that the EEOC cannot rely on the grounds stated in the amended charge to support jurisdiction.

/5 Notably, "[i]n order to obtain enforcement of an administrative subpoena, the EEOC usually does not have to prove either probable cause or reasonable cause to believe that the charge of discrimination is true. Indeed, the purpose of the investigation is to determine whether probable cause or reasonable cause to bring a discrimination charge exists." EEOC v. K-Mart Corp., 694 F.2d 1055, 1066 (6th Cir. 1982) (internal citations omitted).

/6 We review a district court's finding of relevance under a deferential standard. See supra pp. 8-9. However where, as here, the district court has failed to address the issue of relevance, we examine the issue of relevance de novo. Similarly, because the district court did not apply the correct legal standard in determining the burdensomeness of the subpoena, we review that issue de novo as well.

/7 Should the EEOC discover, in the course of a significantly narrowed inquiry, evidence of a broader pattern of discrimination, it is, of course, free to file a commissioner's charge incorporating those allegations and broaden its investigation accordingly. See EEOC v. S. Farm Bureau Cas. Ins. Co., 271 F.3d 209, 211 (5th Cir. 2001). Without a broader charge, however, the EEOC's current request cannot be sanctioned.