**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-1947**

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

         Petitioner – Appellant,

    v.

MARITIME AUTOWASH, INC.,

         Respondent – Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore.  George L. Russell, III, District Judge. (1:15-cv-00869-GLR)

Argued:  March 24, 2016         Decided:  April 25, 2016

Before WILKINSON and NIEMEYER, Circuit Judges, and David C. NORTON, United States District Judge for the District of South Carolina, sitting by designation.

Reversed and remanded by published opinion. Judge Wilkinson wrote the opinion, in which Judge Norton joined. Judge Niemeyer wrote an opinion concurring in the judgment.

**ARGUED:** Paula Rene' Bruner, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Appellant.  John S. Vander Woude, ECCLESTON AND WOLF, PC, Hanover, Maryland, for Appellee. **ON BRIEF:** P. David Lopez, General Counsel, Jennifer S. Goldstein, Associate General Counsel, Lorraine C. Davis, Assistant General Counsel, U. S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Appellant.

WILKINSON, Circuit Judge:

Appellee Maritime Autowash, Inc. employed Elmer Escalante, an undocumented alien, at one of its two full-service carwashes. Escalante filed a complaint against Maritime with the Equal Employment Opportunity Commission, alleging discrimination under Title VII of the Civil Rights Act of 1964. As part of its investigation, the EEOC issued a subpoena seeking information from Maritime related to Escalante's charges, which the employer opposed. The district court denied the EEOC's application for subpoena enforcement.

This matter thus arrives on appeal at a very early stage. The only issue before us is judicial enforcement of the EEOC's subpoena. We cannot yet know whether the agency's investigation will uncover misconduct by the employer or ever ripen into a lawsuit. Nor can we assess what causes of action or remedies might lie down the road. All that the district court was called upon to decide was whether the EEOC had authority to investigate Escalante's charges. We think the trial court erred in declining to authorize that very preliminary step.

I.

In May 2012, Maritime hired Elmer Escalante as a vacuumer at its carwash in Edgewater, Maryland. At the time, Escalante lacked authorization to work in the United States. Maritime and Escalante offer contrasting narratives of his hiring and

2

termination. According to the employer, Escalante was originally hired under the name Angel Erazo. The Department of Homeland Security (DHS) informed Maritime in May 2013 after inspecting its workplaces that Erazo had no lawful work authorization. Maritime contends it terminated "Angel Erazo" and hired the same person under the name "Elmer Escalante" that same month.

For his part, Escalante claims that he was hired in May 2012 under his legal name, not Angel Erazo. The head manager told him on his second day at work that the name Elmer Escalante did not match his social security number. The manager allegedly advised Escalante to obtain new documents bearing a different name, which Escalante did. He went by Angel Erazo for the following year. Escalante describes how, following an inspection by DHS in May 2013, Maritime's owner and its general manager met with all the Hispanic employees. They offered those without proper work authorization $150 each, styled as a one-time bonus, to help them acquire new documentation with new names. Escalante obtained a different social security number corresponding to "Elmer Escalante." Maritime then rehired him and the other Hispanic employees with their new papers.

On July 27, 2013, Escalante and other Hispanic employees complained to Maritime of unequal treatment and discrimination targeting Hispanics. All of them were terminated the day they raised the complaint. Escalante then filed charges with the EEOC

on February 6, 2014 for discrimination on the basis of national origin and retaliation as prohibited under Title VII. The time period identified in his complaint was May 2012 to July 2013. The complaint details the unequal employment conditions facing Hispanic employees at Maritime, including longer working hours, shorter breaks, lack of proper equipment, additional duties, and lower wages. Ten other terminated Hispanic employees lodged similar complaints with the EEOC. The Commission served Maritime with a notice of the charges on February 25, 2014.

In responding to the charges, Maritime denied all allegations of discrimination and stated that Escalante had been terminated for failing to appear for a scheduled work shift. By Maritime's account, "Elmer Escalante" had been employed for only two months, from May 2013 to July 2013. Maritime relegated to a single footnote the fact that Escalante had worked there previously under the name of Angel Erazo. Maritime claimed that it had terminated "Angel Erazo" in May 2013 pursuant to a DHS inspection that revealed Erazo's lack of work authorization. None of Maritime's submissions to the EEOC touched upon whether it had assisted Escalante in switching names and obtaining new documentation, as he alleges it did.

The EEOC served Maritime with a Request for Information (RFI) on May 27, 2014 seeking personnel files, wage records, and other employment data related to Escalante, the other charging

4

parties, and similarly situated employees dating from January 1, 2012 to the time of the request. Maritime refused to provide records for any Hispanic employee other than Escalante. It again insisted that Escalante, as opposed to Angel Erazo, was hired in May 2013 and accordingly limited its response to May to July 2013. Appellee further objected that certain of the agency's requests were unduly burdensome, overly broad, and/or irrelevant.

Faced with Maritime's incomplete response to its RFI, the EEOC issued a subpoena on June 10, 2014 focused only on Escalante's charges. Maritime produced none of the subpoenaed documents. The EEOC then filed an initial application seeking enforcement of its subpoena, which the district court dismissed without prejudice to allow the agency to correct certain factual errors in its application. A second application for subpoena enforcement followed on March 26, 2015.

The district court denied that application in a letter order dated June 23, 2015. J.A. 315-16. The court relied primarily on this circuit's decision in Egbuna v. Time-Life Libraries, Inc., which held that a "plaintiff is entitled to [Title VII] remedies only upon a successful showing that the applicant was qualified for employment" and that being qualified meant being "authorized for employment in the United States at the time in question." J.A. 316 (quoting 153 F.3d 184, 187 (4th

5

Cir. 1998) (en banc) (per curiam)). From Egbuna's reasoning, the district court concluded that Escalante's lack of work authorization precluded any "standing or right to seek the remedies under Title VII" and thus left no viable basis for his EEOC complaint. Id. "As the EEOC's Application [for subpoena enforcement] is premised solely on Escalante's complaint, [the application] must be dismissed." Id. The EEOC has timely appealed.

## II.

### A.

We begin by emphasizing what we need not address in this case. We are not addressing any defenses Maritime might raise against the EEOC's subpoena, such as the undue burdensomeness of certain requests. We are not addressing the viability of any cause of action that Escalante might eventually assert against Maritime. We are not addressing the remedies that he might one day claim. All that is further down the line. The only question we must consider now is whether the EEOC's subpoena, designed to investigate Escalante's Title VII charges, is enforceable. We hold that it is.

The EEOC is empowered to enforce Title VII's provisions against employment discrimination. 42 U.S.C. § 2000e-5(a). Central to that enforcement authority is the power to investigate charges brought by employees, including the right to

6

access "any evidence . . . that relates to unlawful employment practices covered by [the statute]," id. § 2000e-8(a), as well as "the authority to issue administrative subpoenas and to request judicial enforcement of those subpoenas." EEOC v. Shell Oil Co., 466 U.S. 54, 63 (1984) (citing 42 U.S.C. § 2000e-9).

The district court plays a "limited" role in the enforcement of administrative subpoenas. EEOC v. City of Norfolk Police Dep't., 45 F.3d 80, 82 (4th Cir. 1995). "The [judicial review] process is not one for a determination of the underlying claim on its merits; Congress has delegated that function to the discretion of the administrative agency. Rather, courts should look only to the jurisdiction of the agency to conduct such an investigation." EEOC v. Am. & Efird Mills, Inc., 964 F.2d 300, 303 (4th Cir. 1992) (per curiam).

That jurisdictional question is central to the instant dispute. Both parties agree on the key factual issue that Escalante held no valid work authorization when he was hired by Maritime. They disagree on how Escalante's undocumented status affects the EEOC's authority to investigate his charges. Maritime argues that someone lacking proper work authorization was never qualified for employment and therefore lacks any cause of action or remedy under Title VII. According to appellee, "[a] valid charge of discrimination 'is a jurisdictional prerequisite to judicial enforcement of a subpoena issue[d] by the EEOC.'"

7

Appellee's Br. 3-4 (quoting EEOC v. United Air Lines, Inc., 287 F.3d 643, 650 (7th Cir. 2002) (quoting Shell Oil Co., 466 U.S. at 65)). Without a valid charge from the employee presenting a viable cause of action, the court cannot enforce the EEOC's subpoena against the employer.

The Commission responds that it is not obligated to demonstrate valid causes of action or remedies under Title VII when seeking to subpoena information. All it must show is that an "arguable" or "plausible" basis for its jurisdiction exists and that its investigative authority is "not plainly lacking." Appellant's Br. 10 (quoting EEOC v. Randstad, 685 F.3d 433, 442 (4th Cir. 2012)). The agency reads Title VII's definition of "employee" and related provisions to cover Escalante despite his undocumented status, which at least authorizes the agency to investigate his charge of national origin discrimination. Whether causes of action or remedies ultimately arise from the investigation, the Commission argues, has no bearing on its subpoena power. In other words, courts may uphold the agency's subpoena authority without the need to pass on its view of Title VII's coverage of undocumented workers.

### B.

The plain language of Title VII provides a "plausible" or "arguable" basis for the EEOC's subpoena in this case. Randstad, 685 F.3d at 442. The term "employee" in Title VII is defined

8

broadly as any "individual employed by an employer." 42 U.S.C. § 2000e(f). The anti-discrimination provisions use similarly expansive terms, making it illegal to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual" and listing "national origin" as a protected characteristic. Id. § 2000e-2(a). Title VII allows any "person claiming to be aggrieved" to file charges with the EEOC. Id. § 2000e-5(b). Nothing explicitly bars undocumented workers from filing complaints.

Whether under the name Elmer Escalante or Angel Erazo, the charging party in this case was employed at Maritime's carwash, and his charge of discrimination rests squarely on one of the protected grounds. The EEOC's investigation of Escalante's charges was therefore at least plausibly and arguably related to the authority that Congress conferred upon the Commission. Since Maritime challenged only the agency's subpoena authority, the district court should have stopped at that point and enforced the subpoena accordingly. This is not a case where the agency went rogue or jumped the tracks and sought to investigate something unrelated to its statutory charge.

Maritime counters that a reviewing court must ascertain a valid charge of discrimination, which must incorporate a viable cause of action or remedy, as a "jurisdictional prerequisite" to enforcing the agency's subpoena. In other words, what Maritime

9

was asking the district court to do was address Title VII's coverage of undocumented workers before deciding the issue of subpoena enforcement. The district court followed Maritime's lead, concluding that no Title VII causes of action or remedies were open to those lacking proper work authorization, and so the EEOC had no authority to investigate their charges.

This has it all backwards. A court need not first address causes of action or remedies any time it reviews an agency subpoena. Maritime's argument is premised on cases, primarily EEOC v. Shell Oil Co., dealing with various threshold requirements for filing charges with the EEOC and for providing notice to employers. 466 U.S. 54. Shell Oil, for example, addresses how much information must be included in Title VII charges and provided to the employer before the EEOC can secure judicial enforcement of its subpoena.

Those requirements are not at issue here. At the heart of those cases raised by Maritime is § 706 of Title VII, which provides, for instance, that charges be in "writing under oath or affirmation," "contain such information and be in such form as the Commission requires," and comply with a statutory filing period. 42 U.S.C. § 2000e-5(b) (governing the form and content of charges); id. § 2000e-5(e)(1) (requiring charges to be filed within 180 days of the alleged unlawful conduct). This circuit has routinely considered when these threshold requirements,

10

particularly timeliness, form a "jurisdictional prerequisite" to the EEOC's investigation such that non-compliance precludes subpoena enforcement. See, e.g., City of Norfolk Police Dep't., 45 F.3d 80 (considering the EEOC's authority to investigate an untimely charge).

Here, Maritime does not contest Escalante's compliance with § 706 or other threshold conditions. His charges are invalid, Maritime argues, because an undocumented alien cannot present a viable Title VII cause of action or remedy. That is much harder to shoehorn into the concept of a "jurisdictional prerequisite" for enforcing subpoenas. This court has not required the showing of a viable cause of action or remedy at the subpoena enforcement stage, and for good reason. Ensuring that charges meet the guidelines on form, content, and timeliness is a far cry from predicting and evaluating what relief on the merits the charging party might ultimately claim.

Courts are warned not to venture prematurely into the merits of employment actions that have not been brought: "[a]t the subpoena-enforcement stage, . . .'any effort by the court to assess the likelihood that the Commission would be able to prove the claims made in the charge would be reversible error.' The EEOC's authority to investigate 'is not negated simply because the party under investigation may have a valid defense to a

11

later suit.'" Randstad, 685 F.3d at 449 (quoting Shell Oil, 466 U.S. at 72 n. 26; United Air Lines, Inc., 287 F.3d at 651).

Maritime's approach would cram substantive questions of statutory coverage into the confines of subpoena enforcement. Any employer wishing to dodge a subpoena could simply raise every conceivable obstacle to a claimant's prospects for ultimate success. At the point where an investigation has barely started and no lawsuit has been filed, the EEOC itself is hard-pressed to determine the validity of the charges. Without evidence, a record, and appropriate briefing, the court is even less equipped to conduct full-blown merits review. To do so at such an early juncture would "serve[] 'not only to place the cart before the horse, but to substitute a different driver [the district court] for the one appointed by Congress [the EEOC].'" Id. at 449-50 (quoting Graniteville Co. v. EEOC, 438 F.2d 32, 36 (4th Cir. 1971)). Regular order suggests allowing the EEOC investigation to run its course and reserving judgment on the merits for a later time.

C.

The particular issue that Maritime presses -- whether and to what extent Title VII covers undocumented aliens -- is a novel and complex problem especially ill-suited to a premature and absolute pronouncement. In presenting the issue, Maritime relies on this circuit's decision in Egbuna v. Time-Life

12

Libraries, Inc., 153 F.3d 184, and the Supreme Court's decision in Hoffman Plastic Compounds, Inc. v. NLRB, 535 U.S. 137 (2002), both of which involve undocumented workers. By appellee's reading, Egbuna and Hoffman not only allow us to decide this complicated question now, but in fact dictate a clear answer: the EEOC has no authority to investigate charges brought by undocumented aliens.

If only our job were that easy. Neither Egbuna nor Hoffman was presented in the premature posture that we find ourselves in now. In Egbuna, this court reviewed a grant of summary judgment against an employee bringing a Title VII action for unlawful retaliation. Hoffman asked the Court to review an NLRB order awarding an employee backpay following illegal termination. Neither court had any opportunity to consider the relevant agency's subpoena authority or how it related to the relief available to undocumented aliens. In short, those two decisions do not control the outcome here.

What these cases do throw into relief are the hard questions that arise when illegal immigrants invoke statutory protections against employment discrimination. Hoffman is illustrative. Even as the Supreme Court reversed the NLRB's award of backpay to an undocumented alien, it affirmed the Board's authority to impose other sanctions against the employer, including cease and desist orders and notice

13

requirements. See Hoffman, 535 U.S. at 152. The lack of monetary relief for the employee did not foreclose non-monetary remedies the agency could use to rectify unlawful employment conditions. The whole field is more nuanced and less categorical than Maritime suggests.

When laid bare, Maritime's challenge to the EEOC's subpoena envisions a world where an employer could impose all manner of harsh working conditions upon undocumented aliens, and no questions could be asked, no charges filed, and no agency investigation even so much as begun. The employer is asking the court for carte blanche to both hire illegal immigrants and then unlawfully discriminate against those it unlawfully hired. Maritime would privilege employers who break the law above those who follow the law. And it would block the EEOC from shining even the dimmest light upon the employer's actions.

So the agency must be allowed to do its job, but there are limits to its powers too. None of this is intended to sanction subpoena powers over any workplace grievance only speculatively related to an agency's statutory authority. We understand the temptation for agencies to expand rather than contract their spheres of influence. Subpoenas issued against individuals or entities beyond an agency's jurisdiction are ultra vires from the start, and courts stand ready to curb that kind of administrative overreach. If subpoenas are unduly burdensome,

14

that too has long been subject to court challenge. But when, as here, the agency is investigating charges plausibly within its delegated powers, the courts should not obstruct. The district court's judgment is hereby reversed and remanded with instructions that the EEOC's subpoena be enforced.

REVERSED AND REMANDED.

NIEMEYER, Circuit Judge, concurring in the judgment:

I share Judge Wilkinson's sensible view that a "full-blown merits review" is premature at the subpoena-enforcement stage. Ante at 12. But we have previously explained that an agency must "show that the exercise of its jurisdiction is supported by reasonable cause [when] the person to whom the subpoena is directed raises a substantial question that the court's process will be abused by enforcement." EEOC v. S.C. Nat'l Bank, 562 F.2d 329, 332 (4th Cir. 1977) (emphasis added). Here, the employer has raised such a question, contending that the EEOC's issuance of a subpoena based on a charge filed against it by a foreign national unauthorized to work in the United States exceeds the scope of the agency's statutorily prescribed investigative authority. Judge Wilkinson elides this question by focusing on the formalities of the EEOC's jurisdictional requirement. I write separately to emphasize its substantive component.

In order to obtain judicial enforcement of a subpoena, "the EEOC must show," among other things, "that . . . it is authorized to make such investigation." EEOC v. Wash. Suburban Sanitary Comm'n, 631 F.3d 174, 180 (4th Cir. 2011) (internal quotation marks and citation omitted). In the instant case, the EEOC asserts that it derives its authority to investigate Elmer Escalante's complaint from Title VII, which provides that the

16

Commission, "[i]n connection with any investigation of a charge," may only access evidence "that relates to unlawful employment practices covered by this subchapter and is relevant to the charge under investigation." 42 U.S.C. § 2000e-8(a). Indeed, the Supreme Court has cautioned that, under Title VII, the EEOC's power to issue subpoenas must be tethered to the investigation of a "<u>valid</u> charge," distinguishing the EEOC from other agencies that enjoy more "plenary" investigative authority. <u>EEOC v. Shell Oil Co.</u>, 466 U.S. 54, 64-65 (1984) (emphasis added). As the Court has explained,

> In construing the EEOC's authority to request judicial enforcement of its subpoenas, we must strive to give effect to Congress' purpose in establishing a linkage between the Commission's investigatory power and charges of discrimination. <u>If the EEOC were able to insist that an employer obey a subpoena despite the failure of the complainant to file a valid charge, Congress' desire to prevent the Commission from exercising unconstrained investigative authority would be thwarted.</u> Accordingly, we hold that the existence of a charge that meets the requirements set forth in § 706(b), 42 U.S.C. § 2000e-5(b), is a jurisdictional prerequisite to judicial enforcement of a subpoena issued by the EEOC.

<u>Id.</u> at 65 (emphasis added).

While Judge Wilkinson views <u>Shell Oil's</u> "jurisdictional prerequisite" satisfied as long as certain formalities are fulfilled, <u>see</u> <u>ante</u> at 10-11, § 706(b) also contains the substantive requirement that a valid charge allege that the employer "has engaged in an unlawful employment practice," 42

17

U.S.C. § 2000e-5(b). Judicial enforcement of a subpoena issued by the EEOC must therefore insist that the sought-after evidence relate to a charge that plausibly alleges "an unlawful employment practice." Id.

It is not immediately clear that this component of the jurisdictional prerequisite is satisfied in this case -- where all parties agree that Escalante is a foreign national who is unauthorized to work in the United States -- given this court's precedent casting doubt on whether Title VII covers employment relationships expressly prohibited by immigration statutes. See Egbuna v. Time-Life Libraries, Inc., 153 F.3d 184, 188 (4th Cir. 1998) (en banc) (per curiam) (holding that an unauthorized alien whose former employer refused to rehire him lacked a cause of action under Title VII because ruling otherwise "would sanction the formation of a statutorily declared illegal relationship" "[g]iven Congress' unequivocal declaration [in the Immigration Reform and Control Act of 1986] that it is illegal to hire unauthorized aliens"). Where "the person to whom [an EEOC] subpoena is directed raises a substantial question" that the subpoena specifically seeks to facilitate the investigation of alleged employment practices that are categorically excluded from Title VII, S.C. Nat'l Bank, 562 F.2d at 332, courts must engage in serious consideration of the agency's potential encroachment before concluding that its enforcement request is

18

supported by a "plausible" or "arguable" basis for jurisdiction, ante at 8. Such consideration would be consistent with both our "limited" role at the subpoena-enforcement stage, ante at 7, and the Supreme Court's insistence that we not "thwart[]" "Congress' desire to prevent the Commission from exercising unconstrained investigative authority," Shell Oil, 466 U.S. at 65.

Moreover, examining whether the EEOC's application for subpoena enforcement exceeds its substantive jurisdiction would not place us in "a world where an employer could impose all manner of harsh working conditions upon undocumented aliens, and no questions could be asked, no charges filed, and no agency investigation even so much as begun." Ante at 14. It would simply recognize that an investigation of the employer's alleged civil and criminal violations of the immigration laws may fall more appropriately under the purview of other agencies, whose jurisdictions are defined by other, more applicable statutory parameters.

Nonetheless, I concur in the judgment to enforce the subpoena in this case because, although the facts pertaining to Escalante's immigration status are clear, the record plausibly suggests that the employer has engaged in a practice or pattern of discrimination that adversely affects other employees who are authorized to work in the United States. See 42 U.S.C. §§ 2000e-5(f), 2000e-6(e) (permitting the EEOC to bring civil

19

actions).  Moreover, the scope of Egbuna has not been fully delineated where an unauthorized alien is actually working for an employer covered by Title VII.  I agree, therefore, that the EEOC is "arguabl[y]" or "plausibl[y]" acting within its investigative jurisdiction here, ante at 8, even as I underscore Judge Wilkinson's caution that "courts [must] stand ready to curb . . . administrative overreach" when such jurisdiction is lacking, ante at 14.