Justice SOTOMAYOR delivered the opinion of the Court.
Title VII of the Civil Rights Act of 1964 permits the Equal Employment Opportunity Commission (EEOC) to issue a subpoena to obtain evidence from an employer that is relevant to a pending investigation. The statute authorizes a district court to issue an order enforcing such a subpoena. The question presented here is whether a court of appeals should review a district court's decision to enforce or quash an EEOC subpoena de novo or for abuse of discretion. This decision should be reviewed for abuse of discretion.
I
A
Title VII of the Civil Rights Act of 1964 prohibits employment discrimination on the basis of "race, color, religion, sex, or national origin." § 703(a), 78 Stat. 255, 42 U.S.C. § 2000e-2(a). The statute entrusts the enforcement of that prohibition to the EEOC. See § 2000e-5(a) ; EEOC v. Shell Oil Co., 466 U.S. 54, 61-62, 104 S.Ct. 1621, 80 L.Ed.2d 41 (1984). The EEOC's responsibilities "are triggered by the filing of a specific sworn charge of discrimination," University of Pa. v. EEOC, 493 U.S. 182, 190, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990), which can be filed either by the person alleging discrimination or by the EEOC itself, see § 2000e-5(b). When it receives a charge, the EEOC must first notify the employer, ibid., and must then investigate "to determine whether there is reasonable cause to believe that the charge is true," University of Pa., 493 U.S., at 190, 110 S.Ct. 577 (internal quotation marks omitted).
This case is about one of the tools the EEOC has at its disposal in conducting its investigation: a subpoena. In order "[t]o enable the [EEOC] to make informed decisions at each stage of the enforcement process," Title VII "confers a broad right of access to relevant evidence." Id., at 191, 110 S.Ct. 577. It provides that the EEOC "shall ... have access to, for the purposes of examination, ... any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by" Title VII and "is relevant to the charge under investigation." 42 U.S.C. § 2000e-8(a). And the statute enables the EEOC to obtain that evidence by "authoriz[ing] [it] to issue a subpoena and to seek an order enforcing [the subpoena]." University of Pa., 493 U.S., at 191, 110 S.Ct. 577 ; see § 2000e-9.[1] Under that authority, the *1165 EEOC may issue "subp [o]enas requiring the attendance and testimony of witnesses or the production of any evidence." 29 U.S.C. § 161(1). An employer may petition the EEOC to revoke the subpoena, see ibid., but if the EEOC rejects the petition and the employer still "refuse[s] to obey [the] subp[o]ena," the EEOC may ask a district court to issue an order enforcing it, see § 161(2).
A district court's role in an EEOC subpoena enforcement proceeding, we have twice explained, is a straightforward one. See University of Pa., 493 U.S., at 191, 110 S.Ct. 577 ; Shell Oil, 466 U.S., at 72, n. 26, 104 S.Ct. 1621. A district court is not to use an enforcement proceeding as an opportunity to test the strength of the underlying complaint. Ibid. Rather, a district court should " 'satisfy itself that the charge is valid and that the material requested is "relevant" to the charge.' " University of Pa., 493 U.S., at 191, 110 S.Ct. 577. It should do so cognizant of the "generou[s]" construction that courts have given the term "relevant." Shell Oil, 466 U.S., at 68-69, 104 S.Ct. 1621 ("virtually any material that might cast light on the allegations against the employer"). If the charge is proper and the material requested is relevant, the district court should enforce the subpoena unless the employer establishes that the subpoena is "too indefinite," has been issued for an "illegitimate purpose," or is unduly burdensome. Id., at 72, n. 26, 104 S.Ct. 1621. See United States v. Morton Salt Co., 338 U.S. 632, 652-653, 70 S.Ct. 357, 94 L.Ed. 401 (1950) ( "The gist of the protection is in the requirement ... that the disclosure sought shall not be unreasonable" (internal quotation marks omitted)).
B
This case arises out of a Title VII suit filed by a woman named Damiana Ochoa. Ochoa worked for eight years as a "cigarette selector" for petitioner McLane Co., a supply-chain services company. According to McLane, the job is a demanding one: Cigarette selectors work in distribution centers, where they are required to lift, pack, and move large bins containing products. McLane requires employees taking physically demanding jobs-both new employees and employees returning from medical leave-to take a physical evaluation. According to McLane, the evaluation "tests ... range of motion, resistance, and speed" and "is designed, administered, and validated by a third party." Brief for Petitioner 6. In 2007, Ochoa took three months of maternity leave. When she attempted to return to work, McLane asked her to take the evaluation. Ochoa attempted to pass the evaluation three times, but failed. McLane fired her.
Ochoa filed a charge of discrimination, alleging (among other things) that she had been fired on the basis of her gender. The EEOC began an investigation, and-at its request-McLane provided it with basic information about the evaluation, as well as a list of anonymous employees that McLane had asked to take the evaluation. McLane's list included each employee's gender, role at the company, and evaluation score, as well as the reason each employee had been asked to take the evaluation. But the company refused to provide what the parties call "pedigree information": the names, Social Security numbers, last known addresses, and telephone numbers of the employees who had been asked to take the evaluation. Upon *1166 learning that McLane used the evaluation nationwide, the EEOC expanded the scope of its investigation, both geographically (to focus on McLane's nationwide operations) and substantively (to investigate whether McLane had discriminated against its employees on the basis of age). It issued subpoenas requesting pedigree information as it related to its new investigation. But McLane refused to provide the pedigree information, and so the EEOC filed two actions in Federal District Court-one arising out of Ochoa's charge and one arising out of a separate age-discrimination charge the EEOC itself had filed-seeking enforcement of its subpoenas.
The enforcement actions were assigned to the same District Judge, who, after a hearing, declined to enforce the subpoenas to the extent that they sought the pedigree information. See EEOC v. McLane Co., 2012 WL 1132758, *5 (D.Ariz., Apr. 4, 2012) (age discrimination charge); Civ. No. 12-2469, 2012 WL 5868959 (D Ariz., Nov. 19, 2012), App. to Pet. for Cert. 28-30 (Title VII charge).[2] In the District Court's view, the pedigree information was not "relevant" to the charges because " 'an individual's name, or even an interview he or she could provide if contacted, simply could not shed light on whether the [evaluation] represents a tool of ... discrimination.' " App. to Pet. for Cert. 29 (quoting 2012 WL 1132758, at *5 ; some internal quotation marks omitted).
The Ninth Circuit reversed. See 804 F.3d 1051 (2015). Consistent with Circuit precedent, the panel reviewed the District Court's decision to quash the subpoena de novo, and concluded that the District Court had erred in finding the pedigree information irrelevant. Id., at 1057. But the panel questioned in a footnote why de novo review applied, observing that its sister Circuits "appear[ed] to review issues related to enforcement of administrative subpoenas for abuse of discretion." Id., at 1056, n. 3 ; see infra, at 1167 (reviewing Court of Appeals authority).
This Court granted certiorari to resolve the disagreement between the Courts of Appeals over the appropriate standard of review for the decision whether to enforce an EEOC subpoena. 579 U.S. ----, 137 S.Ct. 30, 195 L.Ed.2d 902 (2016). Because the United States agrees with McLane that such a decision should be reviewed for abuse of discretion, Stephen B. Kinnaird was appointed as amicus curiae to defend the judgment below. 580 U.S. ----, 137 S.Ct. 461, 196 L.Ed.2d 339 (2016). He has ably discharged his duties.
II
A
When considering whether a district court's decision should be subject to searching or deferential appellate review-at least absent "explicit statutory command"-we traditionally look to two factors. Pierce v. Underwood, 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). First, we ask whether the "history of appellate practice" yields an answer. Ibid. Second, at least where "neither a clear statutory prescription nor a historical tradition exists," we ask whether, " 'as a matter of the sound administration of justice, one judicial actor is better positioned *1167 than another to decide the issue in question.' " Id., at 558, 559-560, 108 S.Ct. 2541 (quoting Miller v. Fenton, 474 U.S. 104, 114, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985) ). Both factors point toward abuse-of-discretion review here.
First, the longstanding practice of the courts of appeals in reviewing a district court's decision to enforce or quash an administrative subpoena is to review that decision for abuse of discretion. That practice predates even Title VII itself. As noted, Title VII confers on the EEOC the same authority to issue subpoenas that the National Labor Relations Act (NLRA) confers on the National Labor Relations Board (NLRB). See n. 1, supra . During the three decades between the enactment of the NLRA and the incorporation of the NLRA's subpoena-enforcement provisions into Title VII, every Circuit to consider the question had held that a district court's decision whether to enforce an NLRB subpoena should be reviewed for abuse of discretion. See NLRB v. Consolidated Vacuum Corp., 395 F.2d 416, 419-420 (C.A.2 1968) ; NLRB v. Friedman, 352 F.2d 545, 547 (C.A.3 1965) ; NLRB v. Northern Trust Co., 148 F.2d 24, 29 (C.A.7 1945) ; Goodyear Tire & Rubber Co. v. NLRB, 122 F.2d 450, 453-454 (C.A.6 1941). By the time Congress amended Title VII to authorize EEOC subpoenas in 1972, it did so against this uniform backdrop of deferential appellate review.
Today, nearly as uniformly, the Courts of Appeals apply the same deferential review to a district court's decision as to whether to enforce an EEOC subpoena. Almost every Court of Appeals reviews such a decision for abuse of discretion. See, e.g., EEOC v. Kronos Inc., 620 F.3d 287, 295-296 (C.A.3 2010) ; EEOC v. Randstad, 685 F.3d 433, 442 (C.A.4 2012) ; EEOC v. Roadway Express, Inc., 261 F.3d 634, 638 (C.A.6 2001) ; EEOC v. United Air Lines, Inc., 287 F.3d 643, 649 (C.A.7 2002) ; EEOC v. Technocrest Systems, Inc., 448 F.3d 1035, 1038 (C.A.8 2006) ; EEOC v. Dillon Companies, Inc., 310 F.3d 1271, 1274 (C.A.10 2002) ; EEOC v. Royal Caribbean Cruises, Ltd., 771 F.3d 757, 760 (C.A.11 2014) (per curiam ). As Judge Watford-writing for the panel below-recognized, the Ninth Circuit alone applies a more searching form of review. See 804 F.3d, at 1056, n. 3 ("Why we review questions of relevance and undue burden de novo is unclear"); see also EPA v. Alyeska Pipeline Serv. Co., 836 F.2d 443, 445-446 (C.A.9 1988) (holding that de novo review applies). To be sure, the inquiry into the appropriate standard of review cannot be resolved by a head-counting exercise. But the "long history of appellate practice" here, Pierce, 487 U.S., at 558, 108 S.Ct. 2541 carries significant persuasive weight.
Second, basic principles of institutional capacity counsel in favor of deferential review. The decision whether to enforce an EEOC subpoena is a case-specific one that turns not on "a neat set of legal rules," Illinois v. Gates, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), but instead on the application of broad standards to "multifarious, fleeting, special, narrow facts that utterly resist generalization," Pierce, 487 U.S., at 561-562, 108 S.Ct. 2541 (internal quotation marks omitted). In the mine run of cases, the district court's decision whether to enforce a subpoena will turn either on whether the evidence sought is relevant to the specific charge before it or whether the subpoena is unduly burdensome in light of the circumstances. Both tasks are well suited to a district judge's expertise. The decision whether evidence sought is relevant requires the district court to evaluate the relationship between the particular materials sought and the particular matter under investigation-an analysis "variable in relation *1168 to the nature, purposes and scope of the inquiry." Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 209, 66 S.Ct. 494, 90 L.Ed. 614 (1946). Similarly, the decision whether a subpoena is overly burdensome turns on the nature of the materials sought and the difficulty the employer will face in producing them. These inquiries are "generally not amenable to broad per se rules," Sprint/United Management Co. v. Mendelsohn, 552 U.S. 379, 387, 128 S.Ct. 1140, 170 L.Ed.2d 1 (2008) ; rather, they are the kind of "fact-intensive, close calls" better suited to resolution by the district court than the court of appeals, Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 404, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) (internal quotation marks omitted).[3]
Other functional considerations also show that abuse-of-discretion review is appropriate here. For one, district courts have considerable experience in other contexts making decisions similar-though not identical-to those they must make in this one. See Buford v. United States, 532 U.S. 59, 66, 121 S.Ct. 1276, 149 L.Ed.2d 197 (2001) ("[T]he comparatively greater expertise" of the district court may counsel in favor of deferential review). District courts decide, for instance, whether evidence is relevant at trial, Fed. Rule Evid. 401 ; whether pretrial criminal subpoenas are unreasonable in scope, Fed. Rule Crim. Proc. 16(c)(2) ; and more. These decisions are not the same as the decisions a district court must make in enforcing an administrative subpoena. But they are similar enough to give the district court the "institutional advantag[e]," Buford, 532 U.S., at 64, 121 S.Ct. 1276 that comes with greater experience. For another, as we noted in Cooter & Gell, deferential review "streamline[s] the litigation process by freeing appellate courts from the duty of reweighing evidence and reconsidering facts already weighed and considered by the district court," 496 U.S., at 404, 110 S.Ct. 2447 -a particularly important consideration in a "satellite" proceeding like this one, ibid., designed only to facilitate the EEOC's investigation.
B
Amicus ' arguments to the contrary have aided our consideration of this case. But they do not persuade us that de novo review is appropriate.
Amicus ' central argument is that the decision whether a subpoena should be enforced does not require the exercise of discretion on the part of the district court, and so it should not be reviewed for abuse of discretion. On amicus ' view, the district court's primary role is to test the legal sufficiency of the subpoena, not to weigh whether it should be enforced as a substantive matter. Cf. Shell Oil, 466 U.S., at 72, n. 26, 104 S.Ct. 1621 (rejecting the argument that the district court should assess the validity of the underlying claim in a proceeding to enforce a subpoena). Even accepting amicus ' view of the district court's task, however, this understanding of abuse-of-discretion review is *1169 too narrow. As commentators have observed, abuse-of-discretion review is employed not only where a decisionmaker has "a wide range of choice as to what he decides, free from the constraints which characteristically attach whenever legal rules enter the decision[making] process"; it is also employed where the trial judge's decision is given "an unusual amount of insulation from appellate revision" for functional reasons. Rosenberg, Judicial Discretion of the Trial Court, Viewed From Above, 22 Syracuse L. Rev. 635, 637 (1971); see also 22 C. Wright & K. Graham, Federal Practice and Procedure § 5166.1 (2d ed. 2012). And as we have explained, it is in large part due to functional concerns that we conclude the district court's decision should be reviewed for abuse of discretion. Even if the district court's decision can be characterized in the way that amicus suggests, that characterization would not be inconsistent with abuse-of-discretion review.
Nor are we persuaded by amicus ' remaining arguments. Amicus argues that affording deferential review to a district court's decision would clash with Court of Appeals decisions instructing district courts to defer themselves to the EEOC's determination that evidence is relevant to the charge at issue. See Director, Office of Thrift Supervision v. Vinson & Elkins, LLP, 124 F.3d 1304, 1307 (C.A.D.C.1997) (district courts should defer to agency appraisals of relevance unless they are "obviously wrong"); EEOC v. Lockheed Martin Corp., Aero & Naval Systems, 116 F.3d 110, 113 (C.A.4 1997) (same). In amicus ' view, it is "analytically impossible" for the court of appeals to defer to the district court if the district court must itself defer to the agency. Tr. of Oral Arg. 29. We think the better reading of those cases is that they rest on the established rule that the term "relevant" be understood "generously" to permit the EEOC "access to virtually any material that might cast light on the allegations against the employer." Shell Oil, 466 U.S., at 68-69, 104 S.Ct. 1621. A district court deciding whether evidence is "relevant" under Title VII need not defer to the EEOC's decision on that score; it must simply answer the question cognizant of the agency's broad authority to seek and obtain evidence. Because the statute does not set up any scheme of double deference, amicus ' arguments as to the infirmities of such a scheme are misplaced.
Nor do we agree that, as amicus suggests, the constitutional underpinnings of the Shell Oil standard require a different result. To be sure, we have described a subpoena as a " 'constructive' search," Oklahoma Press, 327 U.S., at 202, 66 S.Ct. 494 and implied that the Fourth Amendment is the source of the requirement that a subpoena not be "too indefinite," Morton Salt, 338 U.S., at 652, 70 S.Ct. 357. But not every decision that touches on the Fourth Amendment is subject to searching review. Subpoenas in a wide variety of other contexts also implicate the privacy interests protected by the Fourth Amendment, but courts routinely review the enforcement of such subpoenas for abuse of discretion. See, e.g., United States v. Nixon, 418 U.S. 683, 702, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) (pretrial subpoenas duces tecum ); In re Grand Jury Subpoena, 696 F.3d 428, 432 (C.A.5 2012) (grand jury subpoenas); In re Grand Jury Proceedings, 616 F.3d 1186, 1201 (C.A.10 2010) (same). And this Court has emphasized that courts should pay "great deference" to a magistrate judge's determination of probable cause, Gates, 462 U.S., at 236, 103 S.Ct. 2317 (internal quotation marks omitted)-a decision more akin to a district court's preenforcement review of a subpoena than the warrantless searches and seizures we considered in Ornelas v.
*1170 United States, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), on which amicus places great weight. The constitutional pedigree of Shell Oil does not change our view of the correct standard of review.
III
For these reasons, a district court's decision to enforce an EEOC subpoena should be reviewed for abuse of discretion, not de novo .
The United States also argues that the judgment below can be affirmed because it is clear that the District Court abused its discretion. But "we are a court of review, not of first view," Cutter v. Wilkinson, 544 U.S. 709, 718, n. 7, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005), and the Court of Appeals has not had the chance to review the District Court's decision under the appropriate standard. That task is for the Court of Appeals in the first instance. As part of its analysis, the Court of Appeals may also consider, as and to the extent it deems appropriate, any arguments made by McLane regarding the burdens imposed by the subpoena.
The judgment of the Court of Appeals is hereby vacated, and the case is remanded for further proceedings consistent with this opinion.
It is so ordered.

The statute does so by conferring on the EEOC the same authority given to the National Labor Relations Board to conduct investigations. See 42 U.S.C. § 2000e-9 ("For the purpose of all ... investigations conducted by the Commission ... section 161 of title 29 shall apply").

The District Court also refused to enforce the subpoena to the extent that it sought a second category of evidence: information about when and why those employees who had been fired after taking the test had been fired. The District Court provided no explanation for not enforcing the subpoena to the extent it sought this information, and the Court of Appeals reversed on that ground. 804 F.3d 1051, 1059 (C.A.9 2015). McLane does not challenge this aspect of the Court of Appeals' decision. See Tr. of Oral Arg. 8.

To be sure, there are pure questions of law embedded in a district court's decision to enforce or quash a subpoena. Whether a charge is "valid," EEOC v. Shell Oil Co., 466 U.S. 54, 72, n. 26, 104 S.Ct. 1621, 80 L.Ed.2d 41 (1984) -that is, legally sufficient-is a pure question of law. And the question whether a district court employed the correct standard of relevance, see id., at 68-69, 104 S.Ct. 1621 -as opposed to how it applied that standard to the facts of a given case-is a question of law. But "applying a unitary abuse-of-discretion standard" does not shelter a district court that makes an error of law, because "[a] district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 403, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).