**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Petitioner-Appellant*,

v.

EXXON MOBIL CORPORATION,
*Respondent-Appellee.*

No. 18-55481

D.C. No.
2:17-mc-00066-
CBM-PJW

OPINION

Appeal from the United States District Court
for the Central District of California
Consuelo B. Marshall, District Judge, Presiding

Argued and Submitted November 4, 2019
Pasadena, California

Filed December 9, 2019

Before: Mary M. Schroeder and Michelle T. Friedland,
Circuit Judges, and Lee H. Rosenthal,[*] District Judge.

Per Curiam Opinion

---

[*] The Honorable Lee H. Rosenthal, Chief United States District Judge for the Southern District of Texas, sitting by designation.

## SUMMARY[**]

### Subpoenas

The panel reversed the district court's order denying the United States Chemical Safety and Hazard Board's petition to enforce five requests, made pursuant to administrative subpoenas, issued against Exxon Mobil Corporation following an explosion and chemical release at an ExxonMobil refinery.

The Board challenged only portions of five of the denied requests that related to the alkylation unit and the modified hydrofluoric acid stored there. The requests sought information that was relevant to the February 2015 accidental chemical release.

The panel agreed with the Board's position that its requests for information and documents related to the alkylation unit and the modified hydrofluoric acid stored there were related to its investigation because the risks of damage to the alkylation unit and an accidental release of modified hydrofluoric acid were among the "facts, conditions, and circumstances" of the February 2015 accidental release from the adjacent fluid catalytic cracking unit.

The panel held that a review of the specific disputed requests confirmed that each sought material that might cast light on the Board's investigation into the February 2015

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

release. The panel reversed the challenged portions of the district court's ruling that the subpoena requests were unenforceable and remanded for further proceedings.

## COUNSEL

Jeffrey B. Clark (argued), Assistant Attorney General; Garrett Coyle, Mark R. Haag, and John E. Arbab, Attorneys; Eric Grant, Deputy Assistant Attorney General; Environment & Natural Resources Division, United States Department of Justice, Washington, D.C.; Raymond Porfiri, U.S. Chemical Safety and Hazard Investigation Board, Washington, D.C.; for Petitioner-Appellant.

Steven J. Olsen (argued), Matthew R. Cowan, Lauren F. Kaplan, and John B. Sprangers, O'Melveny & Myers LLP, Los Angeles, California; Hannah Y. Chanoine, O'Melveny & Myers LLP, New York, New York; for Respondent-Appellee.

Xavier Becerra, Attorney General; Christie Vosburg, Supervising Deputy Attorney General; James R. Potter, Deputy Attorney General; Office of the Attorney General, Los Angeles, California; for Amicus Curiae California Attorney General.

Bayron T. Gilchrist, General Counsel; Barbara B. Baird, Chief Deputy Counsel; Daphne Hsu, Senior Deputy District Counsel; South Coast Air Quality Management District, Diamond Bar, California; for Amicus Curiae South Coast Air Quality Management District.

**OPINION**

PER CURIAM:

After an explosion and chemical release at an ExxonMobil refinery, the United States Chemical Safety and Hazard Board issued seven subpoenas with a total of 380 requests. ExxonMobil refused to comply with 56 of the requests. The district court held a hearing and, after argument, granted the Board's petition to enforce about half of the disputed requests, but declined to enforce 27, one in part. The Board appeals the district court's denial of its petition to enforce only five of those 27 requests. We hold that, although the district court did an admirable job, as evidenced by the narrow scope of this appeal, it erred in finding these five requests unenforceable. We reverse and remand.

**I.**

On February 18, 2015, an explosion in the fluid catalytic cracking unit in ExxonMobil's Torrance, California oil refinery caused a release of flammable hydrocarbons and ash mixed with metal, fiberglass, and glass wool debris into the air. Four workers were injured, and ExxonMobil closed the fluid catalytic cracking unit for 15 months for repair. The explosion caused a 40-ton piece of debris from the fluid catalytic cracking unit to fly approximately 100 feet, landing in the adjacent alkylation unit. The debris landed within five feet of a "settler," or tank, filled with modified hydrofluoric acid, a highly corrosive liquid that is toxic if released. The Torrance refinery used a modified form of hydrofluoric acid believed to be safer than the pure form, but less widely used.

The U.S. Chemical Safety and Hazard Investigation Board is authorized to "investigate (or cause to be

investigated), determine and report to the public in writing the facts, conditions, and circumstances and the cause or probable cause of any accidental release resulting in a fatality, serious injury or substantial property damages." 42 U.S.C. § 7412(r)(6)(C)(i). An "accidental release" is "an unanticipated emission of a regulated substance or other extremely hazardous substance into the ambient air from a stationary source." 42 U.S.C. § 7412(r)(2)(A). As part of a § 7412(r)(6)(C) investigation into an accidental release, the Board may:

> hold such hearings, sit and act at such times and places, administer such oaths, and require by subpoena or otherwise attendance and testimony of such witnesses and the production of evidence and may require by order that any person engaged in the production, processing, handling, or storage of extremely hazardous substances submit written reports and responses to requests and questions within such time and in such form as the Board may require.

42 U.S.C. § 7412(L)(i).

The Board issued seven subpoenas containing 380 document and information requests. ExxonMobil complied with most, producing 65 witnesses and nearly 137,000 pages of documents, but refused to comply with 56 requests, arguing that they exceeded the Board's investigatory and subpoena authority.

The Board filed a petition to enforce the administrative subpoenas in the United States District Court for the Central District of California. The court considered each of the 56 requests ExxonMobil challenged, finding 29 enforceable,

26 unenforceable, and one enforceable in part. The district court reasoned that "many of the [Board's] requests seek evidence that is relevant under [the] generous standard" that applies to enforcement of administrative subpoenas, but others "seek information with such attenuated connections to the February 2015 release that they cannot reasonably be considered relevant even under the most liberal relevance standard."

In this appeal, the Board challenges only portions of five of the denied requests. The requests at issue all relate to the alkylation unit and the modified hydrofluoric acid stored there. The disputed portions of the requests are as follows:

> 1SUBDOC01: All risk assessments performed for . . . the alkylation unit, . . . for the past fifteen years . . . .

> 1SUBINT01: Provide information related to the vendors and manufacturers of the modified hydrofluoric acid used in the alkylation unit including a list of vendors, manufacturers, and quantity purchased annually, dates and contact information.

> 3SUBDOC19: All studies, reports, analysis, data, experiments, modeling, technical analysis and specifications related to the same or similar modified hydrofluoric acid used in the alkylation unit at the time of the February 18 incident including but not limited to: records provided or shown to the City of Torrance or their representatives, ExxonMobil or third party records, records provided by the manufacturer or vendor,

records relating to the documented or asserted degree of [hydrofluoric acid] vapor suppression for modified [hydrofluoric acid], and industry and/or Mobil/ExxonMobil studies, experiments, modeling of modified [hydrofluoric acid] and its effectiveness in suppressing vapor compared to unmodified [hydrofluoric acid].

3SUBDOC20: All records related to the volume and concentration of hydrofluoric acid contained in the each of the two alkylation unit [hydrofluoric] acid settlers at the time of the February 18 incident.

3SUBDOC43: All documentation identifying Alkylation . . . Unit siting hazards, risks, and safety concerns. Documentation includes calculations, recommendations, resolutions, preventative measures implemented, mitigate measures implemented, plot plans, simulations, and toxic, flammable, and explosive hazards identified.

## II.

We review a district court's decision not to enforce an administrative subpoena for abuse of discretion. *McLane Co. v. EEOC ("McLane I")*, 137 S. Ct. 1159, 1164 (2017). As part of abuse-of-discretion review, we determine *de novo* whether the district court identified the correct legal rule. *United States v. Hinkson*, 585 F.3d 1247, 1261–62 (9th Cir. 2009). A district court ruling "predicated on an erroneous view of the legal standard" is an abuse of discretion. *EEOC*

*v. McLane Co. ("McLane II")*, 857 F.3d 813, 815 (9th Cir. 2017); *see also McLane I*, 137 S. Ct. at 1168 n.3.

## III.

"The scope of the judicial inquiry in an . . . agency subpoena enforcement proceeding is quite narrow." *EEOC v. Fed. Exp. Corp.*, 558 F.3d 842, 848 (9th Cir. 2009) (quoting *EEOC v. Karuk Tribe Hous. Auth.,* 260 F.3d 1071, 1076 (9th Cir. 2001)). "As long as the evidence is relevant, material, and there is some 'plausible' ground for jurisdiction . . . , the court should enforce the subpoena." *Id.* (quoting *EEOC v. Children's Hosp. Med. Ctr.*, 719 F.2d 1426, 1430 (9th Cir. 1983) (en banc)). The relevance requirement is "not especially constraining," but is instead "'generously construed' to 'afford[] the [agency] access to virtually any material that might cast light on [the matter under investigation].'" *Id.* at 854 (quoting *EEOC v. Shell Oil Co.*, 466 U.S. 54, 68–69 (1984) (first alteration in original)).

The parties appropriately agree that the February 2015 explosion was an "accidental release" within the Board's § 7412(r)(6)(C)(i) investigative authority; that the Board had authority under § 7412(r)(6)(L) to subpoena relevant documents and information; and that the Board's subpoenas were enforceable to the extent they seek information relevant to "the facts, conditions, and circumstances and the cause or probable cause" of the February 2015 accidental release. *See* 42 U.S.C. § 7412(r)(6)(C)(i). The parties' dispute in the district court was over whether 56 requests in the subpoenas sought information that is in fact relevant to the "facts, conditions, and circumstances and the cause or probable cause" of the February 2015 accidental release.

On appeal, the parties focus on the five challenged requests in more detail than in the district court, where there were many more requests in dispute. The parties now present their primary dispute over the five requests' validity as one of statutory interpretation.

The parties agree that no modified hydrofluoric acid was released in the February 2015 explosion and release. But the parties also agree that the February 2015 explosion in the fluid catalytic cracking unit that caused the accidental release also caused the 40-ton piece of debris to land in the alkylation unit, five feet from a settler containing the modified hydrofluoric acid. The Board argues that its requests for information and documents related to the alkylation unit and the modified hydrofluoric acid stored there are relevant to its investigation because the risks of damage to the alkylation unit and an accidental release of modified hydrofluoric acid were among the "facts, conditions, and circumstances" of the February 2015 accidental release from the adjacent fluid catalytic cracking unit. ExxonMobil responds that because there was no damage to the alkylation unit or release of modified hydrofluoric acid, the requests were relevant to a potential future release and not to the "facts, conditions, and circumstances" of the release that did occur.

We agree with the Board. In our view, ExxonMobil's position on appeal does not meaningfully differ from the argument it presented to the district court that "facts, conditions, and circumstances" were limited to those relevant to "determining the cause or probable cause" of the accidental release. The district court correctly rejected that argument, ruling that ExxonMobil's interpretation would make the words "facts, conditions, and circumstances" superfluous. We agree that such an interpretation would fail

to give any meaning to the key phrase "facts, conditions, and circumstances." But the district court's conclusion that the five subpoena requests relating to the alkylation unit and the modified hydrofluoric acid stored there were not relevant to the February 2015 explosion and accidental release in effect imported the causation limitation back into the relevance determination. ExxonMobil illustrates this by arguing on appeal that the requested information and documents about the modified hydrofluoric acid stored in the alkylation unit are not relevant because neither that unit nor the acid were "involved in circumstances that led to the over-pressurization and accidental release" in the fluid catalytic cracking unit.

"When interpreting a statute, we must start with the language of the statute." *Metro One Telecomms., Inc. v. Comm'r*, 704 F.3d 1057, 1061 (9th Cir. 2012). Section 7412(r)(6)(C)(i) authorizes the Board to "investigate . . . the facts, conditions, and circumstances and the cause or probable cause of any accidental release." The Board may investigate "the facts, conditions, and circumstances" of a release, in addition to, and separately from, its "cause or probable cause." The Board is not limited to the "facts, conditions, and circumstances" that caused the accidental release. The Board should look as well to the effects and the potential harm, were a similar incident to occur.

The presence of two tanks full of toxic chemicals on the site of the explosion, very close to where debris from that explosion landed, is among the "circumstances" of the explosion. The breadth of the term "circumstances" supports this result, by authorizing the Board to investigate not only the causes of an explosion, but also its effects. The text of Section 7412(r)(6)(C)(i) compels this result, which is reinforced by viewing that provision within the broader

context of the statute.  For example, the Board's duty to "issue periodic reports to the Congress, Federal, State and local agencies" and in so doing to "recommend[] measures to reduce the likelihood or the consequences of accidental releases," § 7412(r)(6)(C)(ii), bears on what information is included within the Board's Section 7412(r)(6)(C)(i) investigatory authority.[1]  Similarly, the statute's objective of "minimiz[ing] the consequences of any" accidental release, § 7412(r)(1), confirms that an investigation into consequences that in fact arose, for the purpose of preventing similar and worse consequences in the future, is consistent with the statute's overall purpose.[2]

---

[1] We need not decide whether Section 7412(r)(6)(C)(ii) conferred an independent source of subpoena authority to the Board in this case. We merely cite this provision because it sheds light on the reasons why Congress granted investigatory power to the Board under Section 7412(r)(6)(C)(i) and thus on the intended scope of that investigatory power.

[2] Section 7412(r)(6)(F) is not to the contrary.  Under that provision, the Board may "conduct research and studies with respect to the potential for accidental releases" under 42 U.S.C. § 7412(r)(6)(F).  The Board's subpoena power under Section 7412(r)(6)(L) does not extend to research and studies of potential releases under Section 7412(r)(6)(F). ExxonMobil argues that the Board could investigate a possible future release of modified hydrofluoric acid under its Section 7412(r)(6)(F) authority—without subpoena power—but that allowing the Board to investigate potential releases under Section 7412(r)(6)(C)(i) would make Section 7412(r)(6)(F) superfluous.  But when a potential release is part of the "facts, conditions, and circumstances" of an actual release, the statute does not prevent the Board from using Section 7412(r)(6)(C)(i) and the subpoena power under Section 7412(r)(6)(L) to investigate. Section 7412(r)(6)(F)'s lack of subpoena power would constrain the Board's authority if there were only a potential release, which is not the case here.

A review of the specific disputed requests confirms that each seeks material that "might cast light on" the Board's investigation into the February 2015 release. *See McLane I*, 137 S. Ct. at 1169 (quoting *Shell Oil*, 466 U.S. at 68–69).

Request 1SUBDOC01 asks, in relevant part, for all risk assessments for the alkylation unit from the past 15 years. The Board explained that the information generally "tend[ed] to show how Exxon[Mobil] identified hazards and what safeguards Exxon[Mobil] implemented to prevent incidents like the February 2015 explosion." Because the alkylation unit was impacted by the explosion and accidental release, narrowly escaping significant damage to the settler containing modified hydrofluoric acid, the risks presented by that unit and the steps taken to minimize them were part of the facts, conditions, and circumstances of the accidental release. Although the time period requested is extensive, it is appropriate in light of the age of the refinery, and the equipment installed and modified during that period.

Request 1SUBINT01 asks for information on the vendors and manufacturers of the modified hydrofluoric acid in the alkylation unit, "including a list of vendors, manufacturers, and quantity purchased annually, dates and contact information." The Board explained that the "vendors and manufacturers likely have information about the risks associated with the modified hydrofluoric acid used in the alkylation unit . . . [that can] show the potential consequences of a release of modified hydrofluoric acid, which nearly occurred in the February 2015 explosion." This information is related to the modified hydrofluoric acid stored in the alkylation unit at the time of the explosion and accidental release. While no modified hydrofluoric acid was released, its characteristics and qualities, including its volatility and toxicity, were among the "circumstances" of

the accidental release, which included the 40-ton flying piece of debris that landed five feet from a settler holding the acid.  The information sought in the subpoena request was relevant to the facts, conditions, and circumstances of the accidental release.

Request 3SUBDOC19 asks for "[a]ll studies, reports, analysis, data, experiments, modeling, technical analysis and specifications related to the same or similar modified hydrofluoric acid used in the alkylation unit at the time of the February 18 incident," including information about "the documented or asserted degree of [hydrofluoric acid] vapor suppression for modified [hydrofluoric acid], and . . . its effectiveness in suppressing vapor compared to unmodified [hydrofluoric acid]."  The Board justified this request as relevant because it "tend[s] to show the integrity, security, and risks of the modified hydrofluoric acid used in the alkylation unit, which was nearly released in the February 2015 explosion."  As with Request 1SUBINT01, the risks posed by the modified hydrofluoric acid were among the "circumstances" of the accidental release, and the subpoena request is relevant to determining them.

Request 3SUBDOC20 asks for documents and information related to "the volume and concentration of hydrofluoric acid contained in the each of the two alkylation unit [hydrofluoric] acid settlers at the time of the February 18 incident."  The conditions of the alkylation unit and the settlers storing the modified hydrofluoric acid on the day of the explosion further illuminate the facts, conditions, and circumstances of the accidental release, making the requested documents and information relevant.

Request 3SUBDOC43 asks for documents and information related to "siting hazards, risks, and safety concerns" of the alkylation unit.  As with Request

3SUBDOC20, the risks posed by the alkylation unit's location within the refinery were relevant to the facts, conditions, and circumstances of the accidental release.

We recognize that the district court faced the difficult task of evaluating 56 subpoena requests, including some with component parts. The fact that the Board appealed only five of the 27 denied requests speaks to that careful consideration and work. But to the extent that the district court in effect interpreted the Board's legal authority to investigate as limited to "facts, conditions, and circumstances" that bore on the cause or probable cause of the accidental release, it abused its discretion. Correctly interpreting the Board's statutory authority and applying the generous relevance standard, the five requests whose denial the Board appealed are relevant to the Board's investigation of the February 2015 accidental release. By concluding otherwise, the district court adopted "an erroneous view of the legal standard" governing the Board's authority in declining to enforce these five requests. *See McLane II*, 857 F. 3d at 815.

## IV.

We reverse the challenged portions of the district court's ruling that subpoena requests 1SUBDOC01, 1SUBINT01, 3SUBDOC19, 3SUBDOC20, and 3SUBDOC43 were unenforceable, and remand for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**